Good morning, ladies and gentlemen. Our first case for argument this morning is West v. Berryhill. Mr. Rodman. May it please the court. My name is Jason Rodman and I represent the appellant Stephanie West. I aim to preserve three minutes for rebuttal. This is a social security disability case in which benefits were denied the claimant. It is a Step 5 case, which means that they said she couldn't do past work, but she could do some other work in the economy. This is a claimant who has borderline intellectual functioning, psychological problems, chronic pain problems, including lumbar problems, sacroiliitis, which is an infection in that area, migraines, and possible pain from somatization, which basically means some psychological doctor thinks she's experiencing it as real, but it's at some level in her head. This morning I'm going to talk you through two main points. First off, that the administrative law judge's decision did not properly consider all impairments in combination. And second off, that the credibility or pain analysis wasn't... Starting in with the impairments in combination argument. This ends up being primarily about the interplay of the borderline intellectual functioning and the psychological impairments, including mood ups and downs, as well as the somatic end of things. To start off with, some opinions that are relevant to this consideration would be at AR334, which is Becker and the school psychologist encouraging reinforcement for persistence, effort, and independence, as well as explicitly including spatial and time accommodations for visual processing. And then secondarily... Mr. Rodman, you're stating your client's position, but you're not arguing for case. The question that we have to review is whether substantial evidence in the record, viewed in the light favorable to the administrative decision, supports that decision. You need to address that question rather than just restating your client's claim. I agree with you, Your Honor. But the statute itself has language requiring an understandable decision, which in West's mind means considering impairments in combination. And so, for example, the opinion of the subsequent psychological examiner, who concluded that her intellectual functioning actually came out at a lower level than prior tests, and on AR421, explicitly, at the bottom of the paragraph, only talked about intellectual functioning. And the paragraph above it expressed an observation that she has further psych symptoms. And so, in general, back to that understandable language, if you look at the CPP, the concentration, persistence, or pace limitations, on AR24... Which would address the legally relevant question. Right, but it doesn't add up. You can use your time as you want, but after the court tells you how best to use the time, it would be a good idea to do that. Right, Your Honor. So, the point is that she has deficits that have been diagnosed and identified that are not accounted for in the decision. The intellectual functioning scores when she was in 6th grade were at the level of a 3rd grader, and they are lower now. And she was confused about the full-time equivalency. She thought she worked full-time, and so the decision counted in the credibility analysis as if she worked full-time at multiple different jobs, when she did not, in fact, work full-time at those jobs. And so the credibility analysis is flawed on that basis. Counsel, what functional limitations should the ALJ have imposed to take further account of Ms. West's mental impairments? Well, I don't know the exact answer. I suspect it would have to do with absences. I suspect it would have to do with breaks and her ability to persist at a job. Simply saying that she needs a simple job, or simply saying, which is largely what that end of the ALJ opinion does, has to do with how fast she can learn it, not whether she could persist at it. And so specifically, the ALJ opinion, and this doesn't answer your question exactly, except that my point is there is a deliberative process to get that, but it was done inaccurately. So, in this case, they concluded that she could be a cashier, a routing clerk, or a mail sorter. And yet, that doesn't match up with the fact that she has specifically identified deficits. And this is just the intellectual end of it, not even the psychological or other end of it. She has specifically identified deficits in visually presented material, in visual analysis and sequencing, in auditory memory, in computational skills, in speed and mental operation, and in visual memory. And yet, each of those jobs involves a detailed requirement to pay attention and respond to them quickly. But getting back to Your Honor's point about focusing on legal error, West today sees that as legal error, but also sees legal error in the part-time work versus full-time work analysis. Leading up to the residual functional capacity that the ALJ proposes, proffers, if you will, is a discussion repeatedly talking about full-time work, going to all these different elements. But, in fact, yes, the period of time in which there was full-time work, as well as some stuff before that, but that analysis should have been broken out by period, because it's intuitively not following the proper analysis to use full-time work against a later period where the symptoms and the objective abilities have gone downhill. Unless you have any more questions at this time, I'd like to reserve the remaining time for rebuttal. Certainly, Mr. Rodman. Mr. Jaynes. May it please the Court. Good morning, Your Honors. Mr. Rodman, ladies and gentlemen. Daniel R. Jaynes on behalf of the Commissioner. Your Honors, there are four medical opinions in the record, and all four found Ms. West capable of working. In fact, the ALJ's RFC went beyond all these opinions and recognized limitations not contained therein. Substantial evidence asks, could a reasonable fact finder see the evidence cited by the ALJ and agree that that supports the conclusion? That every medical opinion supports the ALJ's RFC finding is substantial evidence. Now, Mr. Rodman identified two limits in his brief. The first was that Ms. West required a job coach. But, Your Honors, no opinion found that Ms. West required a job coach. The closest thing to it was Dr. Von Bargen saying some supervision is usually necessary, but that she's capable of independent functioning. The ALJ's residual functional capacity finding and the Step 5 finding were consistent with this. The other limitation that West outlined in her brief was that she did not have an ability to communicate. But again, Your Honors, no opinion found that she was unable to communicate, and in fact, West testified that when she became overwhelmed at work or she faced a rude customer, that she would alert her boss showing that she could communicate. As to her challenge to the subjective evaluation, she identified three areas. First, she said the ALJ improperly considered her pregnancies. But, Your Honors, West told the ALJ that her pregnancy caused her to drop out of school, to leave a job, and to stop taking her medication. The ALJ acknowledged this in his decision, and now West twists the ALJ's words to say that it's some kind of old-fashioned argument that if a woman is capable of getting pregnant, that she can work. But, Your Honors, the ALJ never said that. The ALJ merely reiterated what West told him, and that was proper. The second area that West challenges in the subjective evaluation is her opioid use. Now, in our statement of facts, we took great pains to outline all evidence addressing opioid use, and it showed the opposite of what West says. It showed that she specifically requested opioids, that she had inconsistent test results, and that she also reported that some of her medications were stolen. And the ALJ considered this in three ways. He only said, one, she took opioids, two, she had inconsistent test results but didn't draw any conclusions from that, and three, he said that the opioid... But, Your Honors, none of this matters because someone can actually be addicted to opioids or abuse opioids and still be found disabled. What matters here is that every opinion in the record found that Ms. West could work. And finally, as Ms. West argues here, that the ALJ misconstrued her testimony about working full-time. But, Your Honors, Ms. West told the ALJ at the hearing that she worked full-time, and the counsel, who was the same counsel here, his partner, did not correct Ms. West's testimony. But, again, this does not matter. The ALJ didn't find that she had past relevant work, and the ALJ only considered her past work in identifying struggles that she faced at those jobs and putting those in the residual functional capacity. And for these reasons, we ask that you affirm. Thank you. Thank you, counsel. Anything further, Mr. Rodman? Briefly, Your Honor. First, as to the job coach slash, really, supervision or ability to function end of it, and this sort of repeats the initial argument, but on AR-421, the psychological examiner only says that someone of intellectual functioning, you know, at least theoretically could function independently, but just above that, opines that that examiner is observing psychological symptoms on top of that. Second, I wanted to focus in, and this is an argument I didn't get to initially just due to time constraints here in the discussion, but it's in the briefs, regarding the opioids and the pregnancy, and it is West's position today that pregnancy and the right to be pregnant, the right to be married, those are fundamental rights under the U.S. Constitution, which involve a high level of scrutiny if you start to impede upon them and violate them. It's also West's position today that there is an opioid crisis and that the administration of the United States government should not be pushing a claimant to be on opioids if it can be avoided. But two things happen in this ALJ opinion. One is that the ALJ opinion denigrates to some degree her credibility as to her limitations based on the fact that she wanted off of opioids because she was pregnant, or she thought she was pregnant. And then at another point in the opinion, the ALJ opinion talks about how she was asking for narcotics because of her pain, and at a different point. But the thing is, if you are pregnant and request to go off of those opioids so that you can exercise your fundamental right, certainly, surely at some point later, if you're still having the pain symptoms, you would need to request to go back on them. But in general, I would get back to the briefing and focus in on the fact that impairments in combination were not considered in the ALJ opinion and that the credibility pain analysis was not one that fits the required dictates. And unless Your Honors had any further questions for me, I would say that West rests and requests reaming. Thank you very much. The case is taken under advisement.